**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT**
**WESTERN DIVISION**

Lance King
15802 State Route 104 N
Chillicothe, Ohio 45601

      Plaintiff,

Vs.

Aramark Correctional Services LLC
2400 Market Street
Philadelphia Pa, 19103-3041

      Defendant,
And

Jane/John Doe "Aramark Supervisor"
5787 State Route 63
Lebanon Ohio, 45036

      Defendant,

Jane Doe known as "Ms.Woods"
5787 State Route 63
Lebanon Ohio, 45036

      Defendant,

And

Wanza Mitchell –Jackson
5787 State Route 63
Lebanon Ohio, 45036

      Defendant,

Case No: 2:23 -cv-156

Judge: Marbely
Magistrate Judge: Deavers

**SECOND AMENDED**
**CIVIL COMPLAINT**

**JURY DEMAND ENDORSED**

i

And

Isaac Bullock
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

 Sgt. J. Maggard,
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Steven Williams
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Rodney Macintosh
5787 State Route 63
Lebanon Ohio, 45036

       Defendant

And

Case Manager Kearns
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Captain David Agee
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Captain Jason Back,
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Lt. Tim Tatman,
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Lt. David Sandridge "Sandman"
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

"C.O Koch",
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

C.O John Wells
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

C.O Ms. Sedlitz,
5787 State Route 63
Lebanon Ohio, 45036

       Defendant,
And

Meredyth McLaughlin
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

And

Natasha Artenz
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

And

Rachel Allen
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

And

Nurse Practitioner Skye Murray
5787 State Route 63
Lebanon Ohio, 45036

Dr. William Harlan
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

And

Dr. Raymond Corbett
5787 State Route 63
Lebanon Ohio, 45036

Defendant

C.O Ms. Kimberly Panunzio
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

And

Deputy Warden Douglas Luneke,
5787 State Route 63
Lebanon Ohio, 45036

4

Defendant.

C.O Fredrick Epperson,
5787 State Route 63
Lebanon Ohio, 45036

Defendant.

C.O Larry Farmer,
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

Lt. Kayla Stebelton
5787 State Route 63
Lebanon Ohio, 45036

Defendant,

Deputy Warden Robert Welch
5787 State Route 63
Lebanon Ohio, 45036

## JURISDICTION

¶ 1. This court has jurisdiction over civil rights violations U.S section 1983 cases.

## PLAINTIFF PARTIES

¶ 2. Lance King, is a Plaintiff in this action whose address is P.O box 5500 Chillicothe Ohio, 45601, Plaintiff was an inmate housed at Warren Correctional Institution.

## DEFENDANT PARTIES

¶ 3. Aramark Correctional Services, is a Defendant in this action who's address 5787 State Route 63 Lebanon Ohio, 45036 this Defendant is being sued in its individual and official capacity.

¶ 4. Jane Doe known as "Ms. Woods", is a Defendant in this action who's address 5787 State Route 63 Lebanon Ohio, 45036 this Defendant is being sued in her individual and official capacity. This Defendant was employed by Aramark Correctional Service LLC as a manager.

¶ 5. Jane or John Doe, Aramark Supervisor is a Defendant in this action who's address 5787 State Route 63 Lebanon Ohio, 45036 this Defendant is being sued in their individual and official capacity. This Defendant was employed by Aramark Correctional Service LLC as a supervisor over the food coordinator's and inmates overseeing the operation of Aramark within the institution at WCI.

¶ 6. Wanza Mitchell –Jackson, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in her individual and official capacity. This Defendant was employed as the Warden of Warren Correctional Institution.

¶ 7. Isaac Bullock, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as an institutional inspector at Warren Correctional Institution.

¶ 8. "Sgt. J. Maggard", is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections, as a Correctional Officer Sergeant at Warren Correctional Institution.

¶ 9. "Unit Manager" Steven Williams, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Unit Manager at Warren Correctional Institution.

¶ 10. "Case Manager" Ms. Kearns, is a Defendant in this action who's address, 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Case Manager at Warren Correctional Institution.

¶ 11. Nurse Practitioner "Skye Murray" worked on the 5th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 12. David Agee, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Captain at Warren Correctional Institution.

¶ 13. Lt. Tim Tatman, is a Defendant in this action who's address, 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Lieutenant at Warren Correctional Institution.

¶ 14. Lt. David Sandridge, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer Lieutenant at Warren Correctional Institution.

¶ 15. C.O Koch, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 16. C.O Fredrick Epperson, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 17. C.O Larry Farmer, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 18. C.O John Wells, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 19. C.O Ms. Sedlitz, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 20. Meredyth McLaughlin is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation as the" Health-Care Administrator"

¶ 21. Nurse Practitioner "Natasha Artenz" worked on the 5th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 22. Nurse Practitioner "Rachel Allen" worked on the 5th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 23. Dr. William Harlan worked on the 6th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 24. Dr. Raymond Corbett worked on the 6th of December is a Defendant in this action who's address 4545 Fisher Rd., Columbus Ohio, 45321, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections.

¶ 25. C.O. Ms. Kimberly Pannunzio, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in her individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer at Warren Correctional Institution.

¶ 26. Captain Jason Back, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer "Captain" at Warren Correctional Institution.

¶ 27. Unit Manger Chief Rodney Macintosh is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036, this Defendant is being sued in his individual and official capacity. This Defendant was employed by Ohio Department of Rehabilitation and Corrections as a Correctional Officer "Chief Unit Manager" at Warren Correctional Institution.

8

¶ 28. Deputy Warden Douglas Luneke, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed as the Deputy Warden of Warren Correctional Institution.

¶ 29. "Deputy Warden Robert Welch, is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed as the Deputy Warden of Warren Correctional Institution.

¶ 30. Lt. Kayla Stabelton is a Defendant in this action who's address 5787 State Route 63, Lebanon Ohio, 45036. This Defendant is being sued in his individual and official capacity. This Defendant was employed as the Lieutenant of Warren Correctional Institution.

## STATEMENTS OF FACTS

¶ 31. On or about November 27, 2021, Plaintiff Lance King, (hereinafter "Plaintiff") was housed at Warren Correctional Institution (hereinafter "W.C.I.") in dorm 1-A, when the dorm was released for institutional dinner.

¶ 32. Plaintiff arrived in the dining hall with other inmates, retrieved a tray from the serving line by Defendant Aramark and its employees, ate the food off of the tray and returned to his unit where he was housed.

¶ **33.** Defendant's Aramark, Aramark's supervisor Jane /John Doe, Aramark's Correctional Service LLC "Manager Woods" and ODRC Correctional Officer's knowingly served or allowed to be served contaminated food to Plaintiff and other inmates of which was removed from a contaminated trash can.

¶ 34. Also on December 02,2021 Plaintiff filed a kite ref# WCI1221000286 about what occurred on November 21, 2021. On 12/03/2021 Defendant Isaac Bullock, who worked as the institutional Inspector replied "The following issue has been verified and addressed. Corrective actions have been taken. Defendant Bullock stated "You will need to complete a Health Service request form to address your medical needs". Instead of directing staff to send Plaintiff to Medical as he could have done knowing the inmates are at a level 3 "not free to move around" and would not be seen for at least a couple days, allowing continued suffering. Later that night after he was locked in his cell, started to suffer an upset stomach, with cramping pains, severe diarrhea and vomiting. See Exhibit (1) Informal Complaints.

¶ 35. Plaintiff by this time was suffering worse than he had days prior instead of getting better.

¶ 36. Defendant's Aramark, Aramark's supervisor Jane /John Doe, Aramark's Correctional Service LLC "Manager Woods" and ODRC Correctional Officer's, recklessly or

9

with wanton disregard for the Plaintiff and other inmate's health and Safety stood by while the inmates ate the contaminated food.

¶ 37. Defendants Aramark Correctional Service LLC personnel failure to practice good food handling procedures and sanitation to prevent outbreaks of food poisoning ODRC Policy 68-MED-04 (G) ref Food Poisoning. Institution safety and health coordinators shall monitor this issue within their institutions as outlined in ODRC Policy 10-SAF-08, Facility Sanitation and Inspection Practices.

¶ 38. Plaintiff followed the recommendation given to him at orientation[1] inmates are discouraged from kiting Medical unless absolutely required, to help enforce this policy ODRC, charges inmates a co-pay for just sending in the request to be seen.

¶ 39. Plaintiff continued to experienced abnormal bowel movements, pain in his stomach like the other inmates. He heard that other inmates were sending in paper requests forms to be seen by medical. He informed Medical that "I need to be seen to find out what's wrong with me, my stomach hurts and my feces is runny when I use the restroom. He turned in the written requests.

¶ 40. Plaintiff sent in a paper Medical request form to be seen by Medical. Where He wrote on it "My stomach is upset and I have been having pains for the past couple days". He turned in the written request.

¶ 41. Plaintiff told the Defendant Ms. Pannunzio of the extreme stomach pain, he was experiencing she told him to kite medical and he told her he did. The Defendant Ms. Pannunzio's actions shows a deliberate indifference to the Plaintiff's health and safety. She had the authority to contact medical and send the Plaintiff with a written pass.

¶ 42. On December 01, 2021 Lt. Kayla Stebelton reviewed the video footage of the Aramark incident and completed an incident report. In her report Lt. Kayla Stebelton acknowledges that,

¶ 43. "On 12/01/2021 I, Lt. Stebelton reviewed video footage of an alleged incident that occurred in rear food service on 11/27/2021. While reviewing the footage the following was found; on 11/27/2021 at 6:20pm on WCI-food service Cook area2 camera, inmate Smith (743-659) dumps food from the serving container into the trash can. It appears they realized after dumping the food that they still needed it. At 6:25pm Aramark Manager Woods is observed using the pitcher and scooping the food out of the trash can into an empty container that inmate Smith is carrying. Inmate Smith is then observed carrying the food to the serving line in the small chow hall and the food is served to the inmates coming to chow. At 6:26 pm a rear food service porter is seen sweeping the floor and dumping the dust pan into the same trash can containing the remains of the discarded food. At 6:27 PM Aramark Woods brings in another empty container near the trash can for inmate Burton (667-877) to scoop more food from the trash can that has now had trash dumped on top from the porter who swept the floor. Aramark

---

[1] Inmates are given orientation when they arrive at each institution, where they are provided rules and procedures to follow in case of an emergency or an issue.

10

Woods stirs in water to the food in the container that came from the trash can and at 6:30 PM inmate Burton takes the food to the main chow hall to be served. Aramark Woods is responsible for serving inmates food from the trash can which is a major health code violation. Both inmates involved have been removed from food service. Video footage has been captured and Deputy Warden Welch was notified". End of report. There is a signature of the Managing Officer dated on 12/03/2021. A copy of the video will be attached with this complaint.

¶ 44. Lt. Kayla Stebelton became aware of Plaintiff's housing unit being exposed to contaminated food, yet never informed the Plaintiff to seek medical attention for possible food poisoning.

¶ 45. Lt. Kayla Stebelton acted with deliberate indifference to Plaintiff health and safety when she failed her duties to make Plaintiff aware of the food being contaminated which was the reason he was ill.

¶ 46. Lt. Kayla Stebelton, also was deliberate indifferent to the Plaintiff's health and safety when she failed her duties and allowed the administration to falsely quarantine the Plaintiff when he sought medical attention for his illness.

¶ 47. Lt. Kayla Stebelton and W.C.I administration attempted to cover up the fact the Plaintiff has been intentionally food poisoned by Aramark Manager Woods.

¶ 48. Deputy Warden Robert Welch was emailed a copy of the incident report that was filed on 12/01/2021 by Lt. Stebelton. Deputy Warden Robert Welch never informed the Plaintiff that he was exposed to contaminated food due to it being in the trash can and having trash that was swept from the floor dumped on top of it.

¶ 49. Deputy Warden Robert Welch was deliberate indifferent to Plaintiff's health and safety when he didn't issue W.C.I. administration to escort the Plaintiff to medical immediately upon his knowing of this incident.

¶ 50. Deputy Warden Robert Welch at least signed the incident report on 12/03/2021 and yet the Plaintiff did not go to medical until 12/05/2021. Plaintiff ate the contaminated food on 11/27/2021.

¶ 51. Plaintiff had to send several Health service requests forms, be harassed and intimidated by W.C.I. staff all prior to even being taken to the medical department.

¶ 52. Deputy Warden Robert Welch, Lt. Kayla Stebelton, Aramark Correctional Services LLC, ODRC, and W.C.I administration each attempted, and has engaged in collusion, engaging in a pattern of corrupt activity when they failed to release names, times, and dates when Plaintiff was exposed to and ate the contaminated food. This is all an effort to protect Aramark and ODRC at all costs. Even at the cost of Plaintiff's health and safety.

¶ 53. Deputy Warden Robert Welch, Lt. Kayla Stebelton, Aramark Correctional Services LLC, ODRC, and W.C.I administration each and together have violated the Plaintiff's

11

constitutional rights to be free from Cruel and Unusual Punishment, and Equal Protection under the law.

¶ 54. On Thursday December 02, 2021 the Plaintiff was informed by C.O Moody, that they were fed out of a trash can.

¶ 55. Plaintiff was told two inmates Edward Smith and Richard Burton, tried to stop the food from being served but were taken to the hole by a lieutenant Sandridge and Ms. Sedlitz for speaking up.

¶ 56. Unknown to the Plaintiff at the time Defendants LT. Sandridge and Ms. Sedlitz were aware that Defendant Aramark Ms. Woods had taken the food out of the trash can, they still allowed the Plaintiff and unit to come in and eat the contaminated food. Defendants LT. Sandridge and Ms. Sedlitz were Deliberately Indifferent to the Plaintiff health and safety for allowing him to eat after knowingly that the food was contaminated.

¶ 57. An Aramark worker Ms. Moody, mentioned on several occasions that she was aware that the Plaintiff unit was served beans out of a contaminated trash can.

¶ 58. Plaintiff was informed inmates Smith, and Burton, were placed in Segregation in an attempt to silence them.

¶ 59. Defendant's named in Paragraphs 3 through 30 acted recklessly or with wanton disregard for the Plaintiff and other inmate's health and safety attempted to cover up that Plaintiff and other inmates were served contaminated food retrieved from a trash can.

¶ 60. Also on December 02, 2021 Plaintiff filed an Informal Complaint Reference number WCI1221000286 explaining to the Deputy Warden, what occurred on November 27, 2021. Deputy Warden Robert Welch replied "if you're not feeling well seek medical attention". Instead of directing staff to send Plaintiff to Medical as he could have done knowing the inmates are at a level 3 "not free to move around" and would not be seen for at least a couple days, allowing continued suffering. See Exhibit (1) Informal Complaints.

¶ 61. Deputy Warden Robert Welch knowingly and wantonly disregarded the plaintiff's health and safety, when he allowed without prevention or intervention W.C.I administration and staff to retaliate, intimidate, and harass the Plaintiff for seeking Medical attention. Deputy Warden Robert Welch at any time could have sent the Plaintiff to medical especially when he had firsthand knowledge of the Plaintiff ingesting contaminated food served to him by Aramark.

¶ 62. Plaintiff by this time was suffering worse than he had days prior instead of getting better.

¶ 63. Plaintiff kited Deputy Warden and explained how he was being treated from WCI administration. In his kite Plaintiff wrote, I wrote the Dept about being food poisoned by Aramark worker, and I've been to medical three times I've been spent to believe that I had covid, food poison or some other kind of bug. I wasn't tested but I was put on quarantine for three days

12

intimidated and talk to crazy for being served food out of a trash can and being sick. I'm documenting this for further results. Ref WCI1221000866 See Exhibit (1) Informal Complaints.

¶ 64. Defendant Sgt. Maggard, knowingly and wantonly disregarded Plaintiff's health and safety when he did not seek medical attention for the inmates in his dorm after receiving multiple complaints from the inmate population about being seek and not going to medical.

¶ 65. Defendant Sgt. Maggard, and his unit staff elected to do nothing, when he allowed the Plaintiff and other inmates to be retaliated against, intimidated, and harassed for an entire month while awaiting a transfer to Chillicothe Correctional Institution.

¶ 66. Defendant's named in Paragraphs 3 through 30, acted recklessly or with wanton disregard for the Plaintiff and other inmate's health and Safety attempted avoid conversation relating to the contaminated food served.

¶ 67. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) at no time openly attempted to notify the affected inmate population that they had eaten or been served contaminated food, even after medical received complaints of illness, from numerous inmates regarding an upset stomach, cramping pains, diarrhea and vomiting.

¶ 68. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) staff never offered or attempted to offer at any time an apology to Plaintiff or the other affected population in regards to them being served contaminated food.

¶ 69. Plaintiff after sending in an Informal Complaint Resolution, known as an "ICR" did as he was instructed by the defendant Deputy Warden Robert Welch to contact Medical even though he had already sent in his first request to be seen. So Plaintiff filed another "Health Service" request form explaining his illnesses and pains, this time he specifically indicated that he believed he had been poisoned (sickened) by digesting contaminated food served to him by Aramark and requested to be seen. ref# WCI1221000286 See Exhibit (1) Informal Complaints.

¶ 70. Plaintiff repeatedly requested for the Defendant's Lt. and Aramark worker's names which Defendant Bullock and other Defendant's intentionally with-held attempting to restrict Plaintiff from learning their identities, even though Defendant Bullock was aware the Defendant's Lt. and other C.O.s allowed the contaminated food to be served after they were placed on notice of what occurred and reacted by placing inmates in segregation for objecting to the food being served.

¶ 71. Defendant's ODRC's medical Staff again refused to see Plaintiff attempting to aid in covering up that Plaintiff had been served contaminated food, to avoid diagnosing him, even though Medical had learned that his block location 1-A was fed food out of a contaminated trash can, and had received his previous Medical Health request form, where he indicated what he was experiencing, amounting to a form of bacterial infection, and his most recent Medical Health form.[2] Which placed Medical on direct notice of his knowledge of the cause of his illnesses.

---

[2] The Medical box is emptied twice a day.

13

¶ 72. Medical refused to see Plaintiff or the other inmates knowingly disregarding their health and safety, knowing what they were experiencing: stomach aches, vomiting and diarrhea, clear signs of food poisoning or a bacterial infection related to something digested, attempting to not diagnose the inmates with any illnesses related to the Defendant Aramark worker's feeding them out of a contaminated trash can. Thereby covering for the Defendant's allowing Petitioner and the other inmates to suffer.

¶ 73. Plaintiff like the other inmates was suffering more now that almost a week has passed and he indicated to Medical that he has been extremely sick.

¶ 74. Medical without permission of the Plaintiff or other inmates provided a list to the Correctional Officer's, Capt.'s and Lt.'s of all inmates housed in 1-A who reported stomach aches, vomiting or continued diarrhea, in violation to Plaintiff's right to privacy.

¶ 75. The Defendant" Health-Care Administrator" Meredyth McLaughlin of The Medial Department violated the Health Insurance Portability and Accountability Act ("HIPPA") ODRC Policy 07-ORD-11 when they informed the C.O.s and Staff of Plaintiff's and other inmates protected health information. Medical provided the list names of each inmate that desired to be seen by them to the Defendant's Institutional Inspector Isaac Bullock, Captain Agee, Lieutenant Tatman, all without the inmate's consent.

¶ 76. Defendant David Agee, retaliated against Plaintiff and the other inmates who reported upset stomach, cramping pains, severe diarrhea or vomiting related to the Aramark food served. Defendant David Agee, self-proclaimed that he personally sent in Defendant Lieutenant Tatman. To handle the inmate population from complaining about being sick.

¶ 77. On December 05, 2021 at approximately 6:45am Defendant Lieutenant Tatman entered Unit 1-A and began screaming, yelling that he has a bunch of inmates in here on some "bull-shit" who are acting like "bitches" and yelled, "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do?" He continued to yell, "Your sick so what... sleep it the fuck off" He can be seen on the camera's in 1-A walking around ranting.

¶ 78. Defendant Lt. Tim Tatman, went around to the cells in 1-A that requested to be seen by Medical, trying to intimidate the inmates from going to Medical or further reporting what they were experiencing, he was saying "shit rolls downhill." If my staff gets in trouble over that Aramark bitch I will make your life hell. If you go to medical your ass is locked the fuck down" "it's your choice!" This can be seen by the cameras and recalled by the other inmates. See attached Affidavit's.

¶ 79. Defendant Lt. Tim Tatman, threats of lock down and making inmates lives hell resulted in some inmates being intimidated into not going to Medical for fear of retaliation even though they were sick. See attached Affidavit's.

14

¶ 80. Defendant Lt. Tim Tatman, stated "I've seen what each of you mother-fuckers wrote to medical", which is confidential according to ODRC's Policy 07-ORD-11 Release of Medical Records.

¶ 81. Plaintiff and the other inmate's family and friends called up to the institution and demanded that the inmates be seen by medical or they would contact the State Troopers.

¶ 82. At approximately 9:30 am Plaintiff and (9) nine other inmates were escorted to medical by Defendant Jane Doe C.O. Ms. Kimberly Panunzio, this can be seen by the dorm cameras in Unit 1-A and by the cameras located in Medical.

¶ 83. Defendant C.O Kimberly Panunzio escorted the Plaintiff to Medical with the group of inmates, where his blood pressure was tested as a mush fake screening. Plaintiff informed Defendant "Sky Murray" a Nurse Practitioner and the other Nurse Practitioner "Rachel Allen" both of the Medical Department, of his symptoms, reporting abnormal bowel movements, pain in his stomach and that he had vomited twice, receiving no response, besides the nurse saying well we seen you.

¶ 84. Defendant "Sky Murray", a Nurse Practitioner of the Medical Department with another Nurse Practitioner "Rachel Allen" refused to provide medication or to recommend transport to an outside hospital to be checked by a doctor, regarding bacteria or other infections the Plaintiff and other inmates may have been suffering due to eating the contaminated food.

¶ 85. Defendant "Sky Murray", a Nurse Practitioner of the Medical Department with another Nurse Practitioner "Rachel Allen" are in clear violation of ODRC Policy 68-MED-04 section (G) (2) Which states Surveillance for suspected cases of food poisoning shall include:

*a.) Collection of stool sample and or food samples for examination by the local health department, in collaboration with the infection control manager;*

*b.) The laboratory will coordinate submission of such samples with the Ohio Department of Health, in accordance with accepted guidelines.*

¶ 86. Defendant's "Sky Murray", a Nurse Practitioner of the Medical Department and other Nurse Practitioner's "Rachel Allen", while in Medical were making jokes with the C.O.'s and laughing about the inmates being fed out of the trash cans by Aramark and being sick. "Saying this is what you signed up for coming to prison!" instead of providing care or assistance to the needs of the inmate's pain.

¶ 87. Once Plaintiff and the other inmates were seen by Medical they were taken back to their unit, locked in their cells and were placed on "quarantine status" as a punishment for speaking up, the Defendant's Medical Staff and W.C.I administration staff were deliberate indifferent to the Plaintiff's health and safety, denying him medical treatment.

¶ 88. Defendant David Agee, attempted to blame COVID-19 for his reason for locking down the Plaintiff and other inmates which conflicted with Lieutenant Tim Tatman's statements

15

and actions as only people who went to medical related to upset stomachs, diarrhea, and vomiting were retaliated against by placing them on lockdown claiming COVID-19.

¶ 89. On or around November 27, 2021- December 10, 2022 Defendant's C.O Fredrick Epperson was the Plaintiff full-time unit 1-A C. O's that failed his duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when he disregarded multiple requests from the Plaintiff to call medical because he was extremely sick to the point he couldn't make it out of the bed.

¶ 90. On or around November 27, 2021- January 10, 2022 Defendant's C.O Fredrick Epperson was the Plaintiff full-time unit 1-a C. O's that failed his duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when he refused multiple requests on behalf of the Plaintiff to provide the names of the staff that was directly responsible for his illness.

¶ 91. On or around November 27, 2021- January 10, 2022 Defendant's C.O Fredrick Epperson was the Plaintiff full-time unit 1-a C. O's that failed his duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when he only allowed the Plaintiff out of his cell for 15 minutes a day to shower, make phones, check his communications regarding kites and informal complaints, or to make his meals for the day.

¶ 92. On or around November 27, 2021- December 10, 2022 Defendant's C.O Larry Farmer was the Plaintiff full-time unit 1-A C. O's that failed his duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when he disregarded multiple requests from the Plaintiff to call medical because he was extremely sick to the point he couldn't make it out of the bed.

¶ 93. On or around November 27, 2021- January 10, 2022 Defendant's C.O Larry Farmer was the Plaintiff full-time unit 1-a C. O's that failed his duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when he refused multiple requests on behalf of the Plaintiff to provide the names of the staff that was directly responsible for his illness.

¶ 94. On or around November 27, 2021- January 10, 2022 C.O Larry Farmer was the Plaintiff full-time unit 1-a C. O's that failed his duties as 2nd shift staff and was deliberate indifferent to the Plaintiff health and safety when he only allowed the Plaintiff out of his cell for 15 minutes a day to shower, make phones, check his communications regarding kites and informal complaints, or to make his meals for the day.

¶ 95. Defendant's ODRC's with the named Defendant's in Paragraphs 3 through 30 (as if fully rewritten herein) have a policy or practiced procedure in place that if an inmate is suspected of having COVID-19, that inmate will be tested and if they test positive for COVID-19, then that inmate and their institutional housing unit will be locked down "quarantined" and any other inmates that came in contact "Contact Tracing" with that inmate will be quarantined.

16

¶ 96. Plaintiff with the other inmates were placed on lockdown treated like they had COVID-19, for staff to justify locking them down, even though no one was tested for COVID-19 by Medical nor had any COVID-19 related symptoms.

¶ 97. Plaintiff while locked down "quarantined" was restricted from generating new Informal Complaint Resolutions "ICR's" or Grievances, where the J-pay Kiosk was restricted to prevent him from filing ICR's or Grievances against ODRC, or Medical's staff. The Kiosk allowed inmates to send Kites (other non-formal forms of communication) to read or write correspondences from family/friends. Plaintiff could read or respond to ICR's or Grievances he had already started but could not generate new ones the J-pay had a system warning and said "you are currently restricted from creating this type of communication".

¶ 98. The inmates who also ate the contaminated food and were sick that refused to go to medical after the threats by Defendant Lt. Tim Tatman, were not placed on quarantine status nor punished in any way continuing general operations "see attached Affidavit".

¶ 99. Defendants Ms. Kimberly Pannunzio a C.O whom was the daily 1st shift officer in the Plaintiff's dorm whom was deliberate indifferent to the Plaintiff's health and safety. Defendants C.O Ms. Kimberly Pannunzio was presented with complaints about the conduct of Aramark and ODRC's staff. C.O Ms. Kimberly Pannunzio was informed of inmates were being harassed and tormented, due to them writing health service request forms, and writing their informal complaints regarding Aramark and ODRC staff. Defendant C.O Ms. Kimberly Pannunzio stood by idle and watch as the mistreatment took place.

¶ 100. Defendants Case Manager Ms. Kearns whom worked in the Plaintiff's dorm was deliberate indifferent to the Plaintiff's health and safety. Defendants Case Manager Ms. Kearns was presented with complaints about the conduct of Aramark and ODRC's staff. Case Manager Ms. Kearns was informed of inmates were being harassed and tormented, due to them writing health service request forms, and writing their informal complaints regarding Aramark and ODRC staff. Defendant Case Manager Ms. Kearns stood by idle and watch as the mistreatment took place.

¶ 101. C.O Ms. Kimberly Pannunzio could have prevented these violations from occurring within their housing unit. Plaintiff was harassed, bullied, and intimidated until he was transferred to Chillicothe Correctional Institution. Defendants C.O Ms. Kimberly Pannunzio witnessed the Plaintiff's false quarantine, witnessed the actions of their co-workers.

¶ 102. C.O Case Manager Ms. Kearns could have prevented these violations from occurring within their housing unit. Plaintiff was harassed, bullied, and intimidated until he was transferred to Chillicothe Correctional Institution. Defendants Case Manager Ms. Kearns witnessed the Plaintiff's false quarantine, witnessed the actions of their co-workers.

¶ 103. Plaintiff personally complained to Defendant's Case Manager Ms. Kearns and C.O Ms. Kimberly Pannunzio about the mistreatment they were receiving by the departments staff whenever they were available. Defendants stood idle and watched the egregious behavior and did

17

nothing to aide in ensuring the Plaintiff's health and safety, showing they were indifferent to the Plaintiffs health and safety.

¶ 104. Plaintiff and other inmates who reported to medical were harassed, tormented, and intimidated because of their complaints regarding Aramark Correctional Services LLC and ODRC staff. Most of these inmates regularly went to the Case Manager Ms. Kearns whom was of the inmates that were affected by the contaminated food served by Aramark Correctional Services LLC and its employee's. Defendants Ms. Kearns stood by and observed day in and day out the violations occurring upon the inmates in her housing unit.

¶ 105. Defendant Captain David Agee, attempted to blame COVID-19 for his reason for locking down the Plaintiff and other inmates which conflicted with Lieutenant Tim Tatman's statements and actions as only people who went to medical related to upset stomachs, diarrhea, and Vomiting were retaliated against by placing them on lockdown claiming COVID-19.

¶ 106. Defendant C.O. Ms. Kimberly Pannunzio escorted back the Plaintiff and the other inmates back to medical on Monday December 06, 2021 to be seen by Defendant William Harlan or Raymond Corbett, after Plaintiff demanded to the C.O.'s to be seen by a doctor, saying that the staff knew the inmates had food poisoning and not COVID-19 where Defendant C.O. responded "Nobody says you all have COVID-19" and would not answer as to why they were locked down when no-one else was.

¶ 107. Defendant William Harlan or Raymond Corbett, were deliberate indifferent to the Plaintiff health and safety when they failed to diagnose Plaintiff, even after the Plaintiff had communicated to the Dr. that he has intestinal issues, his stomach still hurts extremely bad, also he couldn't keep any fluids down, and still had diarrhea. The Dr. was deliberately indifferent to the Plaintiff's medical needs by not providing care, only quarantined Plaintiff and allowed his pain and misery to continue.

¶ 108. Plaintiff, while waiting to be seen by Defendant Doctor William Harlan, or Raymond Corbett in Medical Department, Defendant Warden Wanza Mitchell-Jackson, arrived and was speaking with the medical staff.

¶ 109. Plaintiff and the other inmates tried to speak with Defendant Mitchell-Jackson, but she was very frustrated, yelling about having to come in early because of "us" she refused to converse.

¶ 110. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) each failed to follow the policy's regarding food poisoning, at no time did the staff attempt to collect stool or take food sample for examination to the local health department in collaboration with the infection control manager or according to ALP.

¶ 111. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) WCI each failed to provide notification in order to cease possible causative agents from being distributed to the remaining unit in disregard to Plaintiff's health and safety.

18

¶ 112. Defendant William Harlan, Raymond Corbett refused to diagnosis Plaintiff or the other inmates even with their clear symptoms, knowing they were fed out of a contaminated trash can and kept them on "Quarantine Status" until Thursday December 09, 2021.

¶ 113. Plaintiff on December 13, 2021 sent multiple kites WCI1221001299 to the Deputy Warden and to the Medical Department stating that he was quarantined and has been to medical three times and still no comfort. Also he states he has been lied to about the diagnosis. ref# WCI1221000286 See Exhibit (1) Informal Complaints.

¶ 114. Plaintiff on December 13, 2021 sent multiple kites, Defendant's would later deny quarantining Plaintiff and the other inmates related to COVID-19. Shown by a kite sent by Plaintiff Lance King inmate no: a717661 ref # WCI1221001222 who was subjected to the same behavior for reporting illness related to the contaminated food served by Aramark, the medical department replied back to this kite which stated" in review of your medical file, I do not see a diagnosis for covid-19. you were assessed for influenza like illness related to reported symptoms due to the time frame from the chow hall incident" Signed (Meredyth McLaughlin). See exhibit (1) Informal Complaints

¶ 115. On or around December 09, 2021- January 10, 2022 Defendant Deputy Warden "Douglas Luneke" held a "town hall meeting" during that meeting he stated that inmates weren't transferring institutions for at least 8 weeks, doors were to remain closed, and he wasn't answering any questions regarding "Aramark". The attendees of that meeting were Defendant's "Captain Jason Back", "Unit Manager Steven Williams", "Chief Unit Manager Rodney Macintosh", "C.O John Wells", and several other C. O's along with Defendant "Douglas Luneke", Deputy Warden.

¶ 116. On or around December 09, 2021- January 10, 2022 Defendant" Health-Care Administrator Meredyth McLaughlin and or Employee for Medical" came into unit 1A and retrieved medical paper work held at the desk area of the unit which contained inmate's information during their quarantine status. C.O. Morris was working second shift when it occurred, it was approximately 4:30 pm- 9:00 pm.

¶ 117. Defendant's Lt. Tim Tatman, David Agee, Isaac Bullock and other's each intentionally lied in responses to the informal complaints filed by Plaintiff, attempting to cover up for Aramark Correctional Services LLC, Lt. Sandridge and C.O. Ms. Sedlitz that allowed the Plaintiff to eat the contaminated food served.

¶ 118. Defendant, Bullock and other's each intentionally refused to corporate in response to the informal complaints refusing to provide the names or information of the ODRC employees, such as name Lt. Sandridge, and C.O. Ms. Sedlitz who instead of stopping the contaminated food from being served locked up the inmates who reported the Aramark worker actions.

¶ 119. Defendant's Lt. Sandridge, C.O. Ms. Sedlitz were deliberate indifferent to the Plaintiffs health and safety when they allowed the Plaintiff and other inmates to eat contaminated food knowing it had been reported to them that the food was retrieved from a trash can

19

Defendants are in violation of ODRC Policy 68-MED-04 (G) Food Poisoning, 10-SAF-08 Sanitary Conditions violation of the Fourteenth Amendment of the United States Constitution "equal protection", First Amendment Violation "retaliation".

¶ 120. On or around January 10, 2022 all of the inmates in 1-A were being transferred to Chillicothe Correctional Institution on an emergency ride-out, even after being told prior there would be no ride outs, only 10 of the 100 inmates were classified to actually be transferred to Chillicothe Correctional Institute.

¶ 121. Defendant Isaac Bullock and the other staff members each retaliated against Plaintiff and the other inmates to punish them for filing informal Complaints, going to medical and requesting information regarding Aramark Correctional Services LLC.

¶ 122. Defendant's retaliation consisted of locking the inmates down, not answering their questions, not allowing them to have recreation, when recreation was given it consisted of Plaintiff being allowed out of his cell for a 15 min window to get on the restricted Kiosk or to shower. Most of the time mail was with-held, or not picked up to prevent it from being sent out by the staff.

¶ 123. Defendant Isaac Bullock, was the only known staff person who had the authority to restrict Plaintiff's Kiosk from generating new informal complaint resolutions "ICR's" or grievances.

¶ 124. Plaintiff filed an informal complaint resolution in paper form after he realized he was restricted on the Kiosk against medical for refusing to see him timely and for intentionally not diagnosing him in an attempt to cover-up him being fed contaminated food by Defendant's Aramark and ODRC. Which was never addressed.

¶ 125. Plaintiff requested information concerning the paper ICR's and was ignored by Defendant Isaac Bullock prior to transferring.

¶ 126. Defendant's named in Paragraphs 3 through 30 (as if fully rewritten herein) each acted together to prevent Plaintiff and the other inmates from exposing that they were fed contaminated food by Aramark which resulted in them being sicken.

¶ 127. Plaintiff relied on Defendant Aramark and its employees to provide safe and healthy meals, as this company is his only source of food or chance to receive a balanced meal while incarcerated.

¶ 128. Plaintiff since this ordeal, has sought and been receiving counseling from Mental Health to cope with what he has experienced from the Defendant's listed in paragraphs 31 through 145 as if fully rewritten herein, as he is required to continue to eat food served by Aramark and its employee's contrary to his fears.

¶ 129. Plaintiff has exhausted all remedies unless prevented by the Defendant's as stated above.

20

¶ 130. Defendants in this action clearly violated Plaintiffs Eighth Amendment Constitutional Right to be free from cruel and unusual punishment, Fourteenth Amendment "Equal Protection" and First Amendment "Retaliation" they also violated ODRC's Policy 68-MED-04 (G) Food Poisoning, 07-ORD-11 Release of Medical Records, 10-SAF-08 Sanitary Conditions.

¶ 131. Defendant's Bullock conduct in relation to equal protection and how the Defendant's abridged that protected right concerning their actions in restricting him from being permitted from using the kiosk, recreation, or dayroom time, and phone time, and seeking out the Plaintiff in the Chow hall and being very indifferent all amounts to retaliation and harassment.

¶ 132. Plaintiff only came out of his cell for 15 minutes to shower and to use the microwave for commissary food, during the false quarantine, when the Plaintiff attempted to file complaints about the treatment he received the kiosk instructed him "you are currently restricted from creating this type of communication".

¶ 133. Defendant's Bullock conduct is an extreme effort to prevent Plaintiff from filing anymore grievances against the Prison institution, as well as medical, Aramark, and ODRC staff. Also by preventing Plaintiff from filing grievances on the continuing harassment of him and retaliation against him when he did file previous grievances. Plaintiff was harassed and retaliated against when he went to medical to report being food poisoned, this shows a clear violation of the Fourteenth Amendment equal protection under the Constitution, Eight Amendment Violation Cruel and Unusual punishment, First Amendment Violation Retaliation and Access to the courts.

¶ 134. Plaintiff like every other prisoner has a constitutional right to equal protection under the law which includes access to health care services and the grievance procedure.

¶ 135. Plaintiff was prevented from filing grievances against not only IHS (Inmate Health Services) but also Aramark and some of the other Defendants as expressed in the complaint. A prisoner's constitutional right of access to the courts extends to the prison grievance procedures and "hinges on his ability to access the prison grievance system." Prison officials may not punish an inmate for using disrespectful language in a written grievance, even if that language is "hostile, sexual, abusive or threatening.

¶ 136. Due to the policies and customs of Aramark Correctional Services LLC Plaintiff can explain their conduct and how it shows that they should be held liable for the conduct of their employees. Even assuming Aramark is a state actor, however, a private corporation like Aramark is liable under § 1983 only when its official policy or well-settled custom causes the alleged deprivation of federal rights.

¶ 137. This Circuit held that § 1983 municipal-liability jurisprudence distinguishes between 'policy' and 'custom. The United States Supreme Court has held "municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality

21

¶ 138. A custom, on the other hand, refers to an informal rule or way of doing things that "has not received formal approval through . . . official decision making channels. The custom must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id.

¶ 139. Due to the policies and customs of Aramark Plaintiff can demonstrate that Aramark has well-settled policies and customs of which aided in the causation of the deprivation of Plaintiff's Federal Constitutional rights as they were the "moving force" behind the alleged deprivation.

¶ 140. In a law journal written by Amanda Chan* and Anna Nathanson** Reported by 29 Wm. & Mary Bill of Rts. J. 1009. Cites, most of the bad prison food that makes the news is about private prison food contractors such as Aramark. Aramark contracts with states to provide prison food. Although a state is not bound by federal prison administrative regulation nor other states' administrative regulations, states often model their own prison food policy after the federal ones. Michigan repeatedly made headlines when it encountered systemic problems in prison food with Philadelphia-based private food vendor Aramark.

¶ 141. For example, one Aramark employee fed prisoners actual trash. The Aramark employee had thrown out leftover food, but upon realizing that there were more prisoners to feed, the employee retrieved the food from the trash, reheated it, and served it to the prisoners. This report that was published by Wm. & Mary Bill of Rts. J. 1009. May of 2021. However, Plaintiffs incident happened in November of 2021, within Six months 2 known occurrences happened that involved employees of Aramark feeding inmates actual trash.

¶ 142. That example was another incident by Aramark completely separate from the incident the Plaintiff experienced at W.C.I in November, 2021 yet it shows the same "MODUS OPERANDI" where Defendant Aramark and employees violate Constitutional Rights of inmates across the United States not just here in Ohio, and certainly not at W.C.I were the Plaintiff along with a dorm full of other incarcerated adults were fed food after it had been discarded as trash. This incident is almost exactly like the incident reported in a law journal written by Amanda Chan* and Anna Nathanson** Reported by 29 Wm. & Mary Bill of Rts. J. 1009.

¶ 143. In Ohio, under contract with Aramark, inmates discovered maggots in four prisons, which prompted state officials to launch a statewide investigation. In a federal lawsuit, sixteen prisoners from Kent County alleged that Aramark served rotten chicken tacos and poisoned about 250 prisoners. *

¶ 144. Defendant Aramark has well-settled policies and customs of which aide in the causation, and deprivation of Plaintiff's Federal Constitutional Rights as they were the "moving force" behind the alleged deprivation. Aramark has an established incentive policy, and bad business practices where the company receives incentives "quarterly" if the company saves money, then the Managers receive bonuses in return. However, this is the slippery slope where managers often risk the health and safety of incarcerated adults for company profits and incentives. These incentives and profits are generated by not providing the daily adequate nutritional value inmates are required to eat, and or not complying with proper sanitation this can

22

be accomplished in a variety of ways although the nutritional value, caloric diet, and sanitation is always at risk when Managers are profit driven.

¶ 145. Defendants Aramark Correctional services LLC, Aramark Supervisor, Aramark Coordinator Ms. Woods, ODRC, and all ODRC employees addressed in this complaint, should not be able to cite to the Eleventh Amendment immunity, because the Defendants used their official capacity when violating Plaintiffs constitutional rights. Defendants knew of the well-established Federal Law, meaning Plaintiff's First Amendment, and Eight Amendment, and Fourteenth Amendment.

## CLAIM ONE
(Deliberate Indifference)

¶ 146. The Defendant's in paragraphs 31 through 145 as if fully rewritten herein, have knowingly disregarded the risk of harm to Plaintiff's life and body through his health and safety, amounting to cruel and unusual punishment; acted recklessly to the substantial risk of harm or death by consciously and through their actions disregarded the harm that one's own actions could do to the interests or rights of the Plaintiff in violation of his Eight Amendment right. As he was incarcerated and cannot nor could not care for himself, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and have each failed to do so or failed to prevent the others to do so.

## CLAIM TWO
(Failed to Train)

¶ 147. The Supervisory Defendant's in paragraphs 31 through 145 as if fully rewritten herein have actively engaged in official duties, through the official's own individual actions, have violated the Constitution; the supervisors have abdicated their specific job responsibility, with the 'active performance of the supervisor's individual job function, directly resulting in the constitutional injury. To wit: Implicitly authorized, approved, or knowingly acquiesced" to the underlying constitutional violation, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate against the Plaintiff.

## CLAIM THREE
(Concurrent Negligence)

¶ 148. The Defendant's in paragraphs 31 through 145 as if fully rewritten herein were each negligent when two or more of them acted independently causing or whose actions contributed to the same damage as the others.

## CLAIM FOUR
(Culpable Negligence)

¶ 149. The Defendant's in paragraphs 31 through 145 as if fully rewritten herein acted at times negligently in their conduct, involved a disregard of the consequences likely to result to Plaintiff from their actions.

23

## CLAIM FIVE
(Emotional Distress)

¶ 150. The Defendant's in paragraphs 31 through 145 as if fully rewritten herein each either intended to cause emotional distress, or knew or should have known that their actions would result in serious emotional distress; Defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; Defendant's actions proximately caused injury to Plaintiff resulting in mental anguish suffered was serious and of such a nature that no reasonable person could be expected to endure. To Wit: Each caused emotional distress to the Plaintiff by their actions or lack of.

## CLAIM SIX
(Equal Protection)

¶ 151. The Defendant's in paragraphs 31 through 145 as if fully rewritten herein each violated Plaintiff's equal protection rights guaranteed by the Fourteenth Amendment of the United States Constitution, when they intentionally targeted and discriminated against him treating him differently than others similarly situated without any rational basis for the difference.

## JURY DEMAND ENDORSED

¶ 152. Plaintiff respectfully demands a jury trial on all triable issues herein.

## RELIEF REQUESTED
(Permanent damages)

¶ 153. The Defendant's in paragraphs 31 through 145 as if fully rewritten herein, are the responsible parties that caused damages for past, present, and future harm that cannot be avoided or remedied. Resulting in Plaintiff Lance King, being entitled to *Compensatory damages* where some or all Defendant's caused damages sufficient in an amount to indemnify the injured person for the loss suffered; *Punitive damages*, where some or all Defendant's, acted with recklessness, malice, or deceit specific to the result of Plaintiff, and *Nominal damages*, where some or all Defendant's, were negligent to the point that a trifling sum should be awarded to Plaintiff where a legal injury has been suffered if the court finds no substantial loss or injury is to be compensated.;

¶ 154. To be awarded a sum of no less than $ 10,000,000 (Ten million dollars) for the above damages to be paid jointly and or separately by each named Defendant in this action.

¶ 155. Plaintiff request for the named Defendant's in this action to pay jointly and or separately for the cost of this action.

¶ 156. Plaintiff request for the named Defendant's in this action to pay jointly and or separately reasonable attorney fees, if Plaintiff hires/employs an attorney to handle this actions.

24

¶ 157. Plaintiff Lance King states the statements in this civil complaint are true to the best of his knowledge and belief under the penalty of perjury.


_Lance King_
Lance King

November 12, 2023
Date

25

**STATE OF OHIO )**

                **)SS:**

**ROSS COUNTY )**

I, state that the following is true to the best of my knowledge and belief and against the penalty of perjury:

I, Douglas Thompson       , am currently incarcerated at Chillicothe Correctional Institution. On November 27, 2021, I was housed at the Warren Correctional Institution, In Cell "113". On the above evening in question, I ate the scheduled dinner in the chow hall. Within The next few days, I experienced stomach pains and irregular bowel movements. I kited the Medical Department and the Institution Inspector, explained to him what happened. I notified them, stated that I wasn't feeling to well, it most likely was due to the fact that we were fed beans out of the trash, that were contaminated. At one point, those beans were garbage. Not even fit for a dog. An inmate blew the whistle, he was punished for doing so. These actions were actually caught on camera, as I'm sure your aware of. I was advised to fill out an HEALTH SERVICE REQUEST FORM, which I did.

On Sunday December 05, 2021 Lieutenant Tatman entered into our unit, which was "1A". At the time I was being housed there. He started yelling about the inmates being on some "bullshit", because we chose to speak up due to concerns over our health. Lieutenant Tatman aggressively proceeded to make his rounds through-out our unit, yelling, threatening to lock the whole unit down if inmates went to medical.

EXHIBIT 1A

26

Lieutenant Tatman and the Administration at W.C.I are known for abusing inmates, Using Excessive Force. Lieutenant Tatman repeatedly screamed, threatened, "is this what you guys really want to do?".

Lieutenant Tatman then went to cell 111 (inmate Andy Nottingham) and cell 112 (inmate Rich) and threatened the inmates. Stating that he was locking them down under covid-19 protocols. Which he really did, without any grounds. We all stated that our sickness wasn't from covid-19, it was from the food we were fed out of the trash, as if were not even human. We still have the right to be treated accordingly, even though we messed up and broke the law. We were all currently awaiting transfer because we earned the right, by staying out of trouble.

The Lt. said, what more do you want us to do, we already fired the dumb "bitch". I could hear the inmates tell the Lt., that all they wanted was to be checked out to see if they had food poisoning. He then, locked the unit down because the inmates filed a HEALTH SERVICE REQUEST FORM went to see the Dr.

Although I filed a HEALTH SERVICE REQUEST FORM and wrote an electronic kite and informal complaint, I did not follow through with seeking medical attention. Out of the fear of retaliation from Lieutenant Tatman and the W.C.I administration.

At the time, I was a level two (2), medium security and was awaiting my transfer to London Correctional Institution, as stated before, I did not want the administration to delay my transfer or place me in Segregation. That would have raised my security back to a level 3 and It would have prevented me from transferring to my current institution.

.Douglas Thompson

27

2 of 2

_Douglas Thompson_

**SWORN AND SUBSCRIBED BEFORE ME PERSONALLY ON THIS,** ___4th___ **DAY**
**OF ~~JULY~~ 2022.** November (CM)

_Cherri Marshall_

Notary Public

My Commission expires on 1/19/2027



CHERRI MARSHALL
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 01-19-2?

28
3 of 3

| Shift Commander E. Kendrick | | | 2nd Shift | Saturday November 27 2021 | Officers on Overtime 11 |
|---|---|---|---|---|---|
| Captain: | | | Lieutenant: Sandridge 227 | Lieutenant: | Henness 221! |
| Captain: | | | Lieutenant: Barrett 212! | Lieutenant: | |
| Captain: | | | Lieutenant: Kriss 214 | Lieutenant: | |
| | | | | | |

| | | On Grounds | | Off Grounds | |
|---|---|---|---|---|---|
| POST | OFFICER | Total Posts: 41 | Relief | Good Days | Leaves |
| Unit 1A | Donthnier | Added Post | Morehouse, M.** | Kaufman, K. | Vacation Lv. |
| Unit 1A | McIntosh | RH REC: Firman | | Cates, B. | Cunningham, S. |
| Unit 1B | Shostak (OT) | | Deegan, J. | Fulmer, P. | O'Connor, K. |
| Unit 1C | Lane | RH Esc: Leazier (OT) | | Epperson, F. | Avery, E.*** |
| Unit 1C | Loughman | | Donthnier, B. | Rumpler, E. | Kerns, D. |
| Unit 1D | Rucker (OT) | 3D ESC: Finley, T. | | Robinson, E. | Henness |
| Unit 1D | Heilshorn (VF) | | Couzens, A.*** | Cates, J. | Anderson - 3rd |
| Unit 2A | Closed | | | Montgomery, J. | |
| Unit 2A | Closed | Visiting Williams, K. (VF) | Huddleston, T.** | Reedy, M. | Personal Lv. |
| Unit 2B | Lipsky | | Morris, A.*** | Robinson, B. | Calhoun - 3 |
| Unit 2B | Quinn | | Lane, C. | Dunn, K. | |
| Unit 2C | Chevalier | | Loughman, A. | Robertson Jr, T. | |
| Unit 2C | Chambers | | Lipsky, L. | Foster, K. | Sick Lv. |
| Unit 2D | Randall, M. | | Jones, J. | James, J. | |
| Unit 2D | Adams | | Davis, J. | Weybright, J. | ████ |
| Unit 3A | CLOSED | | | Hill, H. | |
| Unit 3A | CLOSED | | | Mann, B. | |
| Unit 3B | Ballard, C. | | McIntosh, J. | Starkey, B. | |
| Unit 3B | Saggus, J. | | Chambers, D. | Knick, J. | |
| Unit 3C | Collins, R.! | | Firman, A. | Long, T. | Military Lv. |
| Unit 3C | Austin | | Chevalier, E.*** | Anderson, C.$ | Winning, C. |
| Unit 3D | Zimmerman, D.$ | | Quinn, A. | | Kasten, J. |
| Unit 3D | Wheeler, M. | | Adams | | Webb, R. |
| Unit 3DXTRA | Edwards, G. | | Austin | | Perry, S. |
| Medical | Morris | | Sommer | | Luker, J. |
| TPU | Sommer | On-Site Training | | | Other Leaves |
| TPU | Jones, A. | Merbs, K. | | | Miller, S. |
| TPU | Shinno, D. | | | | ████ |
| North Util | Deegan | | | | |
| South Util | Morehouse | | | | |
| East Util | Huddleston | | | | |
| West Util | Couzens | | | | |
| High Side Veh | Harrison (OT) | | | | |
| Low Side Veh | Cates B. (OT) | | | | |
| Front Entry | Emery (VF) | | | | |
| Front Entry | Closed | | | | |
| Recreation | Jones, J | | RTWP | | TWL |
| Recreation | Davis | | Godby | | |
| 1 pm - 9 pm | 1 pm - 9 pm | | Anderson | | |
| Control | Maynard (OT) | | Langefeld | | KEY |
| Control | Tintch (OT) | | | | !: SRT |
| Food Service | Godby (VF) | | | | $: C.I.T. |
| Food Service | Sedlitz, M.*** | | | | *** Female |

29

EXHIBIT 1b "Roll Call"

**Shift Commander** _Carter_  **1st Shift**  Sunday, Dec 05, 2021  Officers on Overtime __7__

Captain: D Agee 120   Lieutenant: M. Kiser 215   **Supervisor VAC**
Lieutenant: T. Tatman 230   Lieutenant: S Vetere 216
Lieutenant:

On Grounds: 12  14    Off Grounds

| POST | OFFICER | Added Post | Relief | Good Days | Leaves |
|---|---|---|---|---|---|
| Unit 1A | Pannunzio, K*** | 3DX Howard | Branch, K | Landis, M | **Vacation Lv.** |
| Unit 1A | Koch | 3D Escort Combs | | Hewitt, V | Barrett, C. |
| Unit 1B | Shostak, R | TPU Rec Util: CLOSED | | Jones, D | Burke, D $ |
| Unit 1C | Crawford | | | Brennan, R | Carpenter, J |
| Unit 1C | Briggs, D | C watch: Dowler | McKenzie, W | Davison, D | Williams, K |
| Unit 1D | Halsey OT | | Howard, S | Wetzel, J | |
| Unit 1D | Baker | | Leazier, B | Barnett, B | |
| Unit 2A | CLOSED | | Howe, A | Moody, C | N. LANE |
| Unit 2A | CLOSED | | Edwards | Borck, M | **Personal Lv.** |
| Unit 2B | Keith (OT) | | | Heineman, C | |
| Unit 2B | Burris, A $ | | Milner, N | Eagle, L | |
| Unit 2C | Spicer, B | | Rittenhouse, M | Wolf, L | |
| Unit 2C | Lindsey, J | Deegan | Goodyk, J | Watson, B | **Sick Lv.** |
| Unit 2D | Milner | Dowler | Lipsky | Clarkson, N | |
| Unit 2D | Lipsky | Koch | Baker, B | Gilland, E | |
| Unit 3A | CLOSED | | | Kallschmidt, M | |
| Unit 3A | CLOSED | | | Rookin | |
| Unit 3B | Deegan | | | | |
| Unit 3B | Harrison, A | | | | |
| Unit 3C | Williams, T | | | | |
| Unit 3C | Davenport, J | | Resigned | | **Ext Sick Lv** |
| Unit 3D | Snelling, J | | Wilson | | |
| Unit 3D | Howe | | Heilshorn | | |
| Medical | Goodyk | | Estep | | |
| TPU | Leazier | | | | |
| TPU | Rittenhouse | | | | **Other Leaves** |
| TPU | Eltzroth, K | | | | Wadlington, W milt |
| North Util | W. Barrett 64 | In-Service | | | Luker - milt 8/1/22 |
| South Util | Sedlitz OT | Deems, W | Freeze List | | |
| East Util | McKenzie | | | | LAMBB-mid |
| West Util | Emery, D | | | | |
| High Side Veh | Bakuzonis (OT) | | | | |
| Low Side Veh | Rucker (OT) | | | | |
| Front Entry | Branch | | | | **TWL** |
| Front Entry | CLOSED | | | | |
| Recreation | Ibezue (OT) | | | | |
| Recreation | Edwards | | | | |
| **5 am - 1 pm** | | **Special Details** | | **SRT/STAR** | |
| Control | Janiszewski, M* | | | | **KEY** |
| Control | Mowery | | **RTWP** | | |
| Food Service | Tipton | | Bailey | | I: SRT |
| Food Service | | | | | $: Crisis (CIT) |
| **Total Posts: 44** | | | | | ^: ESA |

30

EXHIBIT 1C "Roll Call"

**Shift Commander** CPT Ason     **1st Shift**     **Monday, Dec 06, 2021**     **Officers on Overtime** 2

Captain: D Agee 120     Lieutenant: S Vetere 216     **Supervisor VAC**

Lieutenant: T. Tatman 230
Lieutenant: D. Lane 211 (7-3)

| POST | OFFICER | Added Post | Relief | Good Days | Leaves |
|---|---|---|---|---|---|
| | | On Grounds 9 | | Off Grounds | |
| | 15 | | | | Vacation Lv. |
| Unit 1A | Pannunzio, K*** | 3DX :Burke, D $ | Branch, K | Hewitt, V | |
| Unit 1A | Wells | 3D Escort: Closed | Mowery | Gilland, E | Williams, K |
| Unit 1B | Shostak, R | TPU Rec Util: Closed | Wells | Ross, C | Tipton, D*** |
| Unit 1C | Crawford, J $ | | Lambs, D | Kallschmidt, M | Lail, S*** |
| Unit 1C | Briggs, D | IC Watch: Landis | McKenzie, W | Davison, D | Spicer, B |
| Unit 1D | Moore C | | Howard B | Wolf, L | |
| Unit 1D | Ibezue UP | | Howe, A | McDonough, A*** | |
| Unit 2A | CLOSED | Edwards | Wadlington, W | Milner, N | |
| Unit 2A | CLOSED | | Dawler, B | Heineman, C | Personal Lv. |
| Unit 2B | Mowery | | Koch, K | Deems, W | |
| Unit 2B | Burns | | Baker, Sym | Hoffer, C | |
| Unit 2C | Baker | | | Leazier, B | |
| Unit 2C | Lindsey, J | | | Snelling, J | Sick Lv. |
| Unit 2D | Edwards | | | Watson, B | |
| Unit 2D | Carpenter, J | | | Heilshorn, O*** | |
| Unit 3A | CLOSED | | | Rittenhouse, M | |
| Unit 3A | CLOSED | | | Rook, N | |
| Unit 3B | Wadlington | | Resigned | Debban, J | |
| Unit 3B | Harrison, A | | Wilson | Lipsky, L | |
| Unit 3C | Davenport, J | | | | |
| Unit 3C | Williams, T | | | | Ext Sick Lv |
| Unit 3D | Howard | | | | |
| Unit 3D | Branch | | | | |
| Medical | Borck, M | | | | |
| TPU | Eltzroth, K | | | | |
| TPU | Ross | | | | Other Leaves |
| TPU | Howe | | | | Luker - milt 8/1/22 |
| North Util | Dawler | | | InService | Lambe-milt |
| South Util | Brennan, R $ | | | Goodyk, J*** | |
| East Util | McKenzie | | | Haneman (OT) | |
| West Util | Emery, D | | | Snelling (OT) | |
| High Side Veh | Jones, D | | Freeze List | InS.Instruct. | |
| Low Side Veh | Eagle, L*** | | | Wetzel LEC | |
| Front Entry | Closed | | | | TWL |
| Front Entry | Bakazonis 10TI | | | | |
| Recreation | Barnett, B $ | | | SRT/STAR | |
| Recreation | Clarkson, N | | | Leazier, B | |
| | 5 am - 1 pm | Special Details | | | |
| Control | Wetzel | ombs - orientation | RTWP | | |
| Control | Janiszewski, M* | | Landis, M 1D | | KEY |
| Food Service | Koch | | Bailey | | I: SRT |
| Food Service | Barrett, C. | | | | $: Crisis (CIT) |
| | Total Posts: 44 | | | | ^: ESA |

EXHIBIT 1 d"Roll Call"

31

| | | On Grounds | | Off Grounds | |
|---|---|---|---|---|---|
| **Shift Commander** ~~Sgt 53~~ | | | **2nd Shift** | **Monday December 6 2021** | **Officers on Overtime** 9 |
| **Captain:** | Teague 112 | **Lieutenant:** Harrison 228$ | | **Lieutenant:** | Kriss 214 |
| **Captain:** | | **Lieutenant:** | | **Lieutenant:** | |
| | | | | | |
| | | | | | |
| | | **On Grounds** Total Posts: 42 | **Relief** | **Off Grounds** Good Days | **Leaves** |
| **POST** | **OFFICER** | | | | |
| Unit 1A | Fulmer, P. | **Added Post** | ~~Morehouse, M.**~~ | Cunningham, | **Vacation Lv.** |
| Unit 1A | Epperson, F. | RH REC: *CLOSED* | ~~Avery, E***~~ | Miller, S. | |
| Unit 1B | Donthnier | | | Calhoun, J. I | Robertson Jr, T. |
| Unit 1C | CRAWFORD (VF) | RH Esc: *Morehouse* | ~~Godby, R.~~ | Webb, R. | Mann, B. |
| Unit 1C | BRIGGS (VF) | | ~~Donthnier, B.~~ | Zimmerman, | Henness 221! |
| Unit 1D | ELTZROTH (VF) | 3D ESC: *Huddleston* | | Herzog, A. | Weybright R |
| Unit 1D | Foster, K. | | ~~Gouzens, A.**~~ | O'Connor, K. | STARKEY |
| Unit 2A | CLOSED | *Ic whtNo! Cates* | | Jones, A. | HUDDLESTON - Emv Ac OA |
| Unit 2A | CLOSED | | | Wheeler, M. | **Personal Lv.** |
| Unit 2B | Godby | | ~~Morris, A.***~~ | Sedlitz, M.*** | |
| Unit 2B | Sommer | | ~~Loughman, A.~~ | Edwards, G. | |
| Unit 2C | Merks | | | Finley, T. | |
| Unit 2C | Ewen | | Jones, J. | Godby, R. | **Sick Lv.** |
| Unit 2D | Lengefeld | | ~~Davis, J.~~ | Lane, C. | ████████ |
| Unit 2D | BAILER (VF) | | ~~Ewen, T.~~ | Chevalier, E. | |
| Unit 3A | CLOSED | | ~~Lengefeld, H.~~ | Quinn, A. | |
| Unit 3A | CLOSED | | ~~McIntosh, J.~~ | Adams, C. | |
| Unit 3B | Ballard, C. | | | Austin, L. | |
| Unit 3B | Mans | | ~~Sommer~~ | Drum | |
| Unit 3C | Collins, R.! | | | Firman | **Military Lv.** |
| Unit 3C | Anderson, F. | | | | Winning, C. |
| Unit 3D | McIntosh | | | | Kasten, J. |
| Unit 3D | Davis | | | | Perry, S. |
| Unit 3DXTRA | Gouzens | | | | |
| Medical | James, J. | | | | |
| TPU | Shinno, D. | **On-Site Training** | | | **Other Leaves** |
| TPU | Hill, H. | Robinson, E. | CIM | | |
| TPU | LT. LANE (OT) | | Sagus | | |
| North Util | EDWARDS (VF) | | | | ████████ |
| South Util | Dunn, K.$ | | | | |
| East Util | CARPENTER (VF) | | | | |
| West Util | Avery | | | | |
| High Side Veh | Kerns, D. | | | | |
| Low Side Veh | Cates, B. | **CTA** | | | |
| Front Entry | Kaufman, K. | Anderson - HNT | **RTWP** | | |
| Front Entry | DOWLER (VF) | | Cates, J. -1D | | |
| Recreation | Long, T.$ | | | | **TWL** |
| Recreation | Knick, J. | | | | |
| **1 pm - 9 pm** | **1 pm - 9 pm** | | | | |
| Control | Robinson, B.$ | | | | **KEY** |
| Control | WETZEL (VF) | | | | I: SRT |
| Food Service | Loughman | | | | $: C.I.T. |
| Food Service | J. Jones | | | | *** Female |

EXHIBIT 1e
"Roll Call"

32

☐ **Mark the form as confidential**

# INCIDENT REPORT

| Report Date (will be set when report is signed): |
| 12/1/2021 |

| Work Location: | Location of Incident: |
| Warren Correctional Institution | Food Service |

| Name of Reporting Staff: | Title: | INCIDENT DATE: |
| Kayla Stebelton | Correctional Lieutenant | Nov 27, 2021 |

| Involves: | INCIDENT TIME: |
| Aramark Manager Woods | 6:20 PM |

## Check Item Indication Subject Of This Report:

☒ Employee Action    ☐ Facility Maintenance    ☐ Medical    ☐ Recommendations

☐ Inmate/Offender Affairs    ☐ Security    ☐ Victim Issue    ☐ Crisis Intervention Team (CIT)

☐ Use of Force    ☐ Workplace Violence    ☐ Equipment Issue    ☐ Other: _____

## Description of Incident:

On 12/1/2021 I, Lieutenant Stebelton reviewed video footage of an alleged incident that occurred in rear food service on 11/27/2021. While reviewing the footage the following was found; on 11/27/2021 at 6:20 PM on WCI-Food Service Cook Area2 camera, Inmate Smith (743-659) dumps food from the serving container into the trash can. It appears they realized after dumping the food that they still needed it. At 6:25 PM Aramark Woods is observed using a pitcher and scooping food out of the trash can into an empty container that Inmate Smith is carrying. Inmate Smith is then observed carrying the food to the serving line in the small chow hall and the food is served to inmates coming to chow. At 6:26 PM a rear food service porter is seen sweeping the floor and dumping the dust pan into the same trash containing the remains of the discarded food. At 6:27 PM Aramark Woods brings another empty container near the trash can for Inmate Burton (667-877) to scoop more food from the trash can that has now had trash dumped on top from the porter who swept the floor. Aramark Woods stirs in water to the food in the container that came from the trash can and at 6:30 PM Inmate Burton takes the food to the main chow hall to be served. Aramark Woods is responsible for serving inmates food from a trash can which is a major health code violation. Both inmates involved have been removed from food service. Video footage has been captured and Deputy Warden Welch was notified. End of report.

EXHIBIT 2

| Signature of Reporting Staff Member: *Kayla Stebelton* | Date: |
| Kayla Stebelton | 12/1/2021 |

## Action Taken:

1. Notification to DWSS.
2. Video footage captured and incident report completed.
3. Inmates involved removed from food service.

K. Stebelton

| Signature of Managing Officer: | Date: 12/3/2021 |

**Distribution: ALL COPIES TO MANAGING OFFICER** who will check appropriate distribution list below and distribute the copies.

☑ Operations    ☐ Administration    ☑ Special Services    ☐ Department Head _____

☐ Investigator    ☐ EEO    ☐ Personnel Officer    ☐ Administrative Assistant

☐ Record Officer    ☐ Medical    ☐ Health & Safety    ☐ Office of Victim Services

33

DRC 1000 E (Rev. 10-19)      Page 1 of 1

| Ref# WCI1221000286 | Housing:1A119UA | Date Created:12/03/2021 |
|---|---|---|
| ID#: a717661 | Name:KING,LANCE | |
| Form:Kite | Subject:Deputy Warden Special Services | Description:Deputy Warden Special Services |
| Urgent:No | Time left:n/a | Status:Closed |

### Original Form
12/3/2021 11:57:44 AM : ( a717661 ) wrote

Went to chow this week and at this time Ive been experiencing sickiness in my stomach and headaces.I was told that the meal I had ate was from the trash can.One of ur employees from airmark had fed food from the trash can to this block 1-A. So Iam bringing this to ur attention and want to know how safe am I to trust what being served by ur staff?

### Communications / Case Actions
12/9/2021 9:18:13 AM : ( Robert Welch ) wrote

If you are not feeling well seek medical attention.

### Manual Fill-In

EXHIBIT 2a

34

| Ref# WCI1221000866 | Housing:1A119UA | Date Created:12/09/2021 |
|---|---|---|
| ID#: a717661 | Name:KING,LANCE | |
| Form:Kite | Subject:Deputy Warden Operations | Description:Deputy Warden Operations |
| Urgent:No | Time left:n/a | Status:Closed |

Original Form
12/9/2021 2:09:12 PM : ( a717661 ) wrote
To the Inspector Mr Bullock. I wrote the Dept about being food poison by the airmark worker. And Ive been to the medical services 3 times and ive been spent to believe that I had covid, food poison and some kind of bug.I wasnt tested but I was put on quarintine for 3 days intimadated talk to carzy for being served out the trash can and getting sick. Im documenting this for further results.

Communications / Case Actions
12/13/2021 12:39:00 PM : ( Douglas Luneke ) wrote
you kited the wrong person, i am not the inspector.
thanks
DL

Manual Fill-In

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

EXHIBIT 2b

35

| Ref# WCI1221001299 | Housing:1A119UA | Date Created:12/13/2021 |
|---|---|---|
| ID#: a717661 | Name:KING,LANCE | |
| Form:Kite | Subject:Deputy Warden Operations | Description:Deputy Warden Operations |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form

12/13/2021 6:38:50 PM : ( a717661 ) wrote

to whom this may concern.the inspector and whoever is in charge of it . I went to chow late nov.and was fed by ur airmark worker out of the trash. Got sick and went to medical 3times and was told 3 different diagnosis. put o quarintine for 3 days and was told I had covid. been getting the run around  so Im documenting these event for further results. Ive been treated disrespectfully and that falls on somebody who is responcible

## Communications / Case Actions

12/29/2021 1:08:11 PM : ( Douglas Luneke ) wrote

this was reported and investigation was conducted and action has been taken.
thanks

## Manual Fill-In

EXHIBIT 2 C

36

| Ref# WCI1221001222 | Housing:1A119UA | Date Created:12/13/2021 |
| --- | --- | --- |
| ID#: a717661 | Name:KING,LANCE | |
| Form:Kite | Subject:Health Care | Description:Health Care |
| Urgent:No | Time left:n/a | Status:Closed |

## Original Form
12/13/2021 9:59:43 AM : ( a717661 ) wrote

Wanted to know why I diagnosed as to have covid when I had to come back to medical for a second time.After I got food poison in the chowhall.Yall gave me a physical. Which I found odd.I totallly disagree with ur diagnosis..

## Communications / Case Actions
12/16/2021 2:18:28 PM : ( Meredyth McLaughlin ) wrote

In review of your medical file, I do not see a diagnosis for COVID. You were assessed for influenza like illness related to reported symptoms due to the timeframe from the chow hall incident.

## Manual Fill-In

EXHIBIT 2d

37

**AFFIDAVIT** OF JEREMY JOHNSON

STATE OF OHIO)
                ) SS:
ROSS COUNTY )

I, Jeremy Johnson      , certify that the below information is true to the best of my knowledge and belief and under the penalty of perjury:

On November 27, 2021, I went to eat evening chow in the cafeteria after the Ohio State / Michigan game I arrived in the dining hall, got my tray from the line by Aramark and its employees, sat down and ate the meal which mainly consisted of beans which I think it was burrito filling, I went back to my unit. A few hours later I started to feel sick. I didn't think much of it until the next morning when I started throwing up and had diarrhea.

I sent in a paper Medical request form to be seen by Medical. I wrote on it "I don't know what's wrong I ate dinner a few days ago and I have been extremely sick". I turned in the request. During the same time, several inmates in my unit was experiencing the same thing, but I heard they was food poisoned, so I thought to myself I must have been food poisoned also.

I Immediately Kited Inspector Bullock, he stated I needed to contact medical even though I had already and they had done nothing. I decided to file another request to be seen by medical, thinking maybe they are now aware of me being food poisoned the would rush to see me.

I explained that I was worse than I had been days prior instead of getting better. I specifically indicated to medical in the kite that I believed I had been poisoned (sickened) by eating food served to me by Aramark.

Medical did not send for me to be seen even though they were fully aware of what I was experiencing as by this time I had wrote around I think two request to be seen it could have been three but I certainly placed them on notice that I needed help.

Sunday on December 05, 2021 at 6:30 am Lieutenant Tatman entered Unit 1-A and began screaming, yelling that he has a bunch of inmates in here on some "bull-shit" who are acting like "bitches" and yelled, "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do?" He continued to yell, "Your sick so what… sleep it the fuck off" He can be seen on the camera's in 1-A walking around ranting. Lt. Tatman, went around to the cells in 1-A that requested to be seen by Medical, trying to intimidate me and the other inmates from going to Medical or further reporting what we were experiencing, he was saying "shit rolls downhill." If my staff gets in trouble over that Aramark bitch I will make your life hell. If you go to medical your ass is locked the fuck down" "it's your choice!" This can be seen by the cameras and recalled by the other inmates. Lt. Tatman, threats of lock down, and making our life hell resulted in me being intimidated into not going to Medical for fear of retaliation, even though I was sick. Lt. Tatman, stated "I've seen what each of you mother-fuckers wrote to medical".

38

Exhibit 3

At approximately 9:30 am I witnessed (9) nine other inmates being escorted to medical by C.O. Ms. Penunzio, I was wondering and asking why wasn't I called for to go see medical, but after Lt. Tatman came into the Unit I got really discouraged and was waiting until the other inmates came back thinking they would get me next.

After the inmates returned to the unit they were quarantined and Ms. Penunzio stated medical told them they had Covid-19.

Medical however, never did send for me and after seeing the inmates being punished I stopped requesting to be seen out of fear I was never quarantined or punished only the initial (9) people that went to medical was quarantined and punished.

Between December 09, 2021- January 10, 2022 Lt. "Luneke", held a "town hall meeting" where he stated that inmates weren't transferring institutions for at least 8 weeks, doors were to remain closed, and he wasn't answering any questions regarding "Aramark". The attendees of that meeting were "Back", Captain; "Williams", Unit Manager; "Macintosh", Chief Unit Manager; "Wells", C.O. and several other C. O's. Also during this time frame Lt. Jane Doe known as" Health-Care Administrator and or Employee for Medical" came into our unit and retrieved medical paper work held at the desk area of the unit which contained inmate's information during their quarantine status. Morris C.O. was working second shift when this occurred, it was approximately 4:30 pm- 9:00 pm.

I was never locked down, my questions were answered I was given recreation, and was able to move about the same as I always have. I was able to attend recreation, Church programming when it was available. My mail was never restricted, and I had a working J-pay the entirety of the weeks this was going on with the other inmates.

I have experienced extreme emotional distress over this matter Aramark and O.D.R.C has broken the trust I had in them to make sure I was treated humanly and with some dignity. I have heightened anxiety levels due to having to continue to eat the food served by Aramark, and its employees. Causing me to have a regular loss of appetite requiring me to force eat to avoid becoming ill or malnourished this is reoccurring behavior from both Aramark and O.D.R.C they don't care about the health and welfare of incarcerated adults.

Exhibit 3

_Jeremy Johnson_
Jeremy Johnson

**SWORN AND SUBSCRIBED BEFORE ME PERSONALLY ON THIS** 17th **DAY OF**

March 20 23.

_Cherri Marshall_
Notary Public

My commission expires on 1/19/2027

(39)

NOTARIAL SEAL
STATE OF OHIO

CHERRI MARSHALL
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 01-19-27

## PROOF OF SERVICE

I certify that a true copy of this complaint has been sent by Regular U.S. mail to the below listed Defendant's:

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION
4545 Fisher Rd.
Columbus Ohio, 45321

Wanza Mitchell –Jackson
5787 State route 63
Lebanon Ohio, 45036

Isaac Bullock
5787 State route 63
Lebanon Ohio, 45036

"Sgt. J. Maggard"
5787 State route 63
Lebanon Ohio, 45036

"Unit Manager Steven Williams"
5787 State route 63
Lebanon Ohio, 45036

"CaseManager Kearns"
5787 State route 63
Lebanon Ohio, 45036

David Agee
5787 State route 63
Lebanon Ohio, 45036

Lt. " Tim Tatman "
5787 State route 63
Lebanon Ohio, 45036

" Lt. David Sandridge"
5787 State route 63
Lebanon Ohio, 45036

"C.O Koch",
5787 State route 63
Lebanon Ohio, 45036

"C.O John Wells"
5787 State route 63
Lebanon Ohio, 45036

"C.O Ms. Sedlitz"
5787 State route 63
Lebanon Ohio, 45036

Dr. Raymond Corbett
5787 State route 63
Lebanon Ohio, 45036

Meredyth McLaughlin
"Health Care Administrator"
5787 State route 63
Lebanon Ohio, 45036

" Nurse Practitioner "Sky Murray"
5787 State route 63
Lebanon Ohio, 45036

Dr. William Harlan
5787 State route 63
Lebanon Ohio, 45036

"C.O Ms. Kimberly Pannunzio"
5787 State route 63
Lebanon Ohio, 45036

"Deputy Warden Douglas Luneke"
5787 State route 63
Lebanon Ohio, 45036

"Captain Jason Back"
5787 State route 63
Lebanon Ohio, 45036

"C.O Fredrick Epperson"
5787 State route 63
Lebanon Ohio, 45036

"C.O Larry Farmer",
5787 State route 63
Lebanon Ohio, 45036

" Unit Manager Rodney Machintosh"
5787 State route 63
Lebanon Ohio, 45036

Aramark Correctional Services LLC
2400 Market Street
Philadelphia, Pa 19103-3041

Aramark "supervisor"
5787 State route 63
Lebanon Ohio, 45036

" Nurse Practitioner "Rachel Allen"
5787 State route 63
Lebanon Ohio, 45036

" Aramark Manager Ms. Woods"
5787 State route 63
Lebanon Ohio, 45036

"Nurse Practitioner Natasha Arentz"
5787 State route 63
Lebanon Ohio, 45036

Deputy Warden Robert Welch
5787 State route 63
Lebanon Ohio, 45036

Lt Kayla Stebleton
5787 State route 63
Lebanon Ohio, 45036

And electronically filed both on this __12__ day of ~~October~~ *November* 2023.

*Lance King*

Lance King
Inmate No.717661
15802 State Route 104 N
Chillicothe, Ohio 45601
**PLAINTIFF-PRO SE.**

40